# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| SHERYL GATOFF, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUDIOLOGY DISTRIBUTION, LLC, d/b/a HEARUSA,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

# TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION .................................................................................. 1

JURISDICTION AND VENUE ............................................................................ 1

THE PARTIES ....................................................................................................... 2

FACTUAL ALLEGATIONS ................................................................................. 3

    I.      The California Information Privacy Act ................................................ 3

    II.     The Federal Wiretap Act ...................................................................... 5

    III.    Defendant's Websites ........................................................................... 5

    IV.   Overview of the Third Parties' Tracking Technologies........................ 21

          47.    Google, Meta, and Microsoft Each Wiretap the
                Website with their Respective Tracking
                Technologies, which Defendant Purposefully
                Installed on the Website .......................................................... 21

          48.    The Third Parties' tracking technologies................................. 21

    A.     Google ................................................................................................. 21

    B.     Meta..................................................................................................... 25

    C.     Microsoft ............................................................................................ 27

    V.     Defendant Aids, Agrees With, Employs, and Otherwise
          Enables The Third Parties to Wiretap Users'
          Communications.................................................................................. 29

    A.     Google ................................................................................................. 29

    B.     Meta..................................................................................................... 32

    C.     Microsoft ............................................................................................ 33

    VI.   Defendant Enables the Third Parties to Pair the Above Data
          with Users' Identities .......................................................................... 35

CLASS ALLEGATIONS ...................................................................................... 43

CAUSES OF ACTION .......................................................................................... 46

COUNT V .............................................................................................................. 58

PRAYER FOR RELIEF ........................................................................................ 59

DEMAND FOR JURY TRIAL ............................................................................. 60

Plaintiff Sheryl Gatoff ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated (the "Class Members") against Audiology Distribution, LLC d/b/a HearUSA, Inc. ("HearUSA" or "Defendant"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to herself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of a class and subclass of all persons in the United States and residents of California, respectively, who, during the class period, had their personally identifiable information ("PII") and/or protected health information ("PHI") improperly intercepted by or otherwise disclosed to third-parties Google LLC ("Google"), Meta Platforms, Inc. ("Meta"), and Microsoft, Inc. ("Microsoft") (collectively, the "Third Parties") as a result of using hearusa.com (the "Appointment Website") and hearingshop.com (the "Purchase and Screening Website") (together, the "Websites"), which are owned, operated, and controlled by Defendant.

2.      Defendant aids, employs, agrees with, and otherwise enables the Third Parties to intercept Plaintiff's and Class Members' communications while using the Websites, including communications containing PII and/or PHI. Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the Class, and there is minimal diversity.

4.      The Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## THE PARTIES

### *Plaintiff Sheryl Gatoff*

6.     Plaintiff Sheryl Gatoff is an adult citizen of the state of California and is domiciled in Palm Desert, California.

7.     In or around February 2025, Plaintiff Gatoff visited the Appointment Website. Plaintiff Gatoff was in California when she visited the Appointment Website.  Upon accessing the Appointment Website, Plaintiff Gatoff browsed and booked a hearing health appointment at HearUSA Palm Desert, 72655 Highway 111, Suite B3, Palm Desert, CA 92260.

8.     Because Plaintiff accessed the Appointment Website to browse and book an appointment for hearing health, and because of Defendant's actions as alleged herein, Plaintiff's use of the Appointment Website has led to the unlawful interception of her medical information, including information regarding her medical condition, history, and/or treatment.

9.     As a result of Defendant's unlawful conduct as alleged herein, third parties intercepted information about the hearing health appointment that Plaintiff scheduled on the Appointment Website—namely, the HearUSA location from which she sought care and/or the fact that Plaintiff completed a hearing health appointment booking.

10.     Pursuant to the systematic process described herein, Defendant assisted third parties with intercepting Plaintiff's confidential communications. Defendant assisted these interceptions without Plaintiff's knowledge, consent, or express written authorization.

11.     By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully disclosed Plaintiff's communications.

### Defendant HearUSA, Inc.

12.     Audiology Distribution, LLC d/b/a HearUSA ("HearUSA" or "Defendant") is incorporated in Delaware and has its principal place of business in Palm Beach Gardens, Florida.  Defendant facilitates a variety of hearing health care services for its patients, such as hearing aids and hearing technology,[1] and "has more than 380 hearing centers throughout the United States."[2]   Users can book appointments, purchase hearing health products, and/or complete a hearing health screening online, through Defendant's Websites to obtain medical care and manage the treatment or diagnosis of their medical conditions.

## FACTUAL ALLEGATIONS

### I.     The California Information Privacy Act

13.     The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens.  The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."  Cal. Penal Code § 630.

14.     The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call.*"  *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

15.     Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

---

[1] *See* HEARUSA, *About Us*, www.hearusa.com/about-us/ (last accessed February 8, 2025).

[2] *See* HEARUSA, *Hearing Centers*, https://www.hearusa.com/hearing-centers/ (last accessed February 8, 2025).

While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*

As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication— the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas*, 38 Cal. 3d at 360-61 (emphasis added; internal citations omitted).

16.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

17.    CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

18.    As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

19.    A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party

to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

20.    Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Plaintiff does so, here, against Defendant.

## II.    The Federal Wiretap Act

21.    The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

22.    Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

23.    Persons who have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

## III.    Defendant's Websites

24.    Defendant facilitates hearing health services for users of its Websites, (1) hearusa.com (the "Appointment Website"); and (2) hearingshop.com (the "Purchase and Screening Website").

25.    On the Appointment Website, users can schedule an appointment at one

of Defendant's "more than 380 hearing centers throughout the United States."[3]

26.     Defendant encourages users to book an appoint online: "Think you have a hearing loss? Book an appointment at one of our Hearing Centers. The hearing screening is complimentary with no strings attached."[4]

27.     On the Purchase and Screening Website, users can browse and purchase various hearing aids and/or other hearing health equipment.[5] Users can also take a "2-minute" or "25-minute hearing screening[.]"[6] Indeed, Defendant encourages users to take an online screening: "With our complimentary online hearing screening, you can take the first step in addressing your hearing issues and protecting your hearing health for years to come. Click above to get started."[7]

28.     Unbeknownst to Plaintiff and Class Members, however, Defendant aids, agrees with, employs, and otherwise enables Google, Meta, and Microsoft (the "Third Parties") to eavesdrop on those confidential communications using the Third Parties' respective wiretaps, as set out *infra*.

29.     Defendant has integrated the Third Parties' wiretaps into the Website. Through the integration of the Third Parties' tracking technologies,[8] Defendant assisted the Third Parties with intercepting and otherwise obtaining the identities and

---

[3] HEARUSA, *Hearing Centers*, https://www.hearusa.com/hearing-centers/ (last accessed February 8, 2025).

[4] HEARUSA, *Book a Complimentary Hearing Appointment*, https://www.hearusa.com/book-appointment/ (last accessed February 12, 2026).

[5] *See* HEARUSA, https://www.hearingshop.com/.

[6] *See id.*

[7] HEARUSA, *Free online hearing test*, https://www.hearusa.com/online-hearing-test/ (last accessed February 8, 2025).

[8] *See, e.g.*, GOOGLE, START LEARNING ABOUT GOOGLE ANALYTICS, https://developers.google.com/analytics; META, META PIXEL, https://developers.facebook.com/docs/meta-pixel; MICROSOFT ADVERTISING, *What is UET and how can it help me?*, https://help.ads.microsoft.com/#apex/ads/en/56681/2.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    6

online activity of Defendant's patients, including information related to the type of hearing health treatment patients were seeking and for which they booked appointments.

30.     Website users' confidential communications are the product of users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from users conveying responses to questions and prompts, and actively making other selections.  All of the foregoing is information created through the intent of Website users, *e.g.*: (1) information created by and in response to users' communicative inputs; (2) information created by and in response to users' intended messages to the Website, and Defendant; and (3) information created by the Website in response to users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses. Google, Meta, and Microsoft, as installed and integrated by Defendant, contemporaneously intercept Website users' button clicks selecting such services.

//

//

//

//

//

//

//

//

//

//

//

### *The Appointment Website*

31.    When a user enters hearusa.com, they are prompted to book an appointment.  *See* Screen 1 ("Book appointment").



**"Screen 1"**

32.    Next, users are able to search for a Hearing Center near them.  Users may search for a "City name or zip code" and select a particular Hearing Center.  *See* Screens 2 and 3.



**"Screen 2"**

---



**"Screen 3"**

33.    Once users find a particular Hearing Center, they click "Book appointment[.]" *See* Screen 4.



**"Screen 4"**

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                          9

34.     Afterwards, Defendant prompts users: "Choose your appointment type[,]" such as "[h]earing aid screening[.]"  Users then click "Next" to proceed to the next step of the booking process.  *See* Screen 5.



**"Screen 5"**

35.     Users then must select a date and time for their appointment and click "Next" to proceed to the next step of the booking process.  *See* Screen 6.



**"Screen 6"**

36.     Users are asked to "provide [their] personal details to finalize the booking."  *See* Screen 7A.  Users are required to provide their name, email, phone number, and date of birth.  *See id.*  Patients may also select the type of insurance they have; for example, "Medicare[,]" "Other insurance not Medicaid[,]" or "Private[.]" *See* Screen 7B.  Defendant says: "Please do not share sensitive information such as medical data ... or any other personal information here."  *See id.*  Finally, users click "Next" to proceed to the next step of the appointment booking process.  *See id.*



**"Screen 7A"**



**"Screen 7B"**

37.    Finally, users are asked to review their details before booking an appointment.  *See* Screen 8A.[9]  Defendant asks users: "Please check if everything is correct before you book your appointment."  *Id*.  Users are also required to check a box to confirm that they're "not a robot" before clicking "Schedule Appointment" to schedule their appointment.  *See* Screen 8B; *see also* Screen 8C ("YOUR APPOINTMENT IS CONFIRMED").



**"Screen 8A"**



**"Screen 8B"**

# YOUR APPOINTMENT IS CONFIRMED, MARY.

An email confirmation with your appointment details has been sent to you. We look forward to seeing you soon.

**"Screen 8C"**

---

[9] Personal information in Screen 8A redacted.

*The Purchase and Screening Website*

38.     Users who enter hearingshop.com (the "Purchase and Screening Website") are able to browse between "Hearing Aids" and "Accessories" among other hearing health products.  *See* Screen 9.



**"Screen 9"**

//

//

//

//

//

//

//

//

//

//

//

39.   Users may select one or more hearing health products they are interested in learning about.  *See* Screen 10.



**"Screen 10"**

40.   Users are able to learn more about the hearing health product once on the product page as well as the price of that product.  *See* Screen 11 ("Moisturizes and lubricates the ear canal"; "$3.10").  Users may click "Add to Cart" to add that particular product to their shopping cart.  *See id.*



**"Screen 11"**

41.    Next, users may click "Check out" so as to proceed with the next step of their purchase.  *See* Screen 12.



**"Screen 12"**

//

//

//

//

//

//

//

//

//

42.     After users enter their payment details (*see* Screen 13), users click "Pay Now" so as to make their purchase.  After users make their purchase,  Defendant tells users that their "order is confirmed" (*see* Screen 14).



**"Screen 13"**



**"Screen 14"**

43.    While on hearingshop.com, users may also elect to take a "hearing screening" (i.e. a hearing test) to check their hearing.  *See* Screen 15.



**"Screen 15"**

//

//

//

//

//

//

//

//

//

//

//

//

//

44.    If users click on "Take 2-minute hearing screening[,]" they are asked to answer a series of questions.  *See* Screens 16A through 16F.  For example, Defendant asks whether users "have to worry about missing the telephone ring or bell[,]" to which a user either can, for example, "Agree" or "Disagree."  *See* Screen 16B.



"Screen 16A"



"Screen 16B"



"Screen 16C"                                          "Screen 16D"



"Screen 16E"                                          "Screen 16F"

45.     Only after users click through these various screens (*see supra* Screens 16A through 16F), users are asked to "[e]nter your information … to see your results and receive a copy."   Screen 17.   Defendant says that "[w]e will not share your information with any third-parties."   *Id.*   Users then click "Get your results[.]" *See id.*



**"Screen 17"**

//

//

//

//

//

46.     Based on users' answers to Defendant's various questions (*see supra* Screens 16A through 16F), Defendant provides users with a diagnostic.  For example, Defendant may tell users who answer the questions a certain way that they have "Severe Hearing Loss" and that a "hearing solution is recommended for you. Acting now is key to reducing serious health risks."  Screen 18.



**"Screen 18"**

//

//

//

//

//

## IV.    Overview of the Third Parties' Tracking Technologies

47.    Google, Meta, and Microsoft each wiretap the Website with their respective tracking technologies, which Defendant purposefully installed on the Website.

48.    The Third Parties' tracking technologies send secret instructions to a Website user's browser or application, without alerting the individual that this is happening.   The tracker then causes the browser or application to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers alongside additional information about the Website user's identity.   This entire process occurs within milliseconds.   In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant.   Thus, the Third Parties' interception of these communications occurs "in transit."   *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion…"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961 (N.D. Cal. 2023) (finding in-transit interception was alleged based on similar process to the one alleged herein).

### A.    Google

49.    Google wiretaps the Website with trackers associated with "Google Analytics."[10]   According to Google, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights into [] business[es]."[11]

---

[10] GOOGLE, START LEARNING ABOUT GOOGLE ANALYTICS, https://developers.google.com/analytics.

[11] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447.

"To measure a website … [one] add[s] a small piece of JavaScript measurement code to each page on [a] site."[12]  Then, "[e]very time a user visits a webpage, the tracking code will collect … information about how that user interacted with the page."[13]  Specifically, Google Analytics tracks "events"; "sessions"; and "users[.]"[14]

50.    "Events let [clients] measure … when someone loads a page, clicks a link, [] makes a purchase[]" and more.[15]  Google provides a menu of "recommended events" (i.e., "completes a purchase"; "searches [] website or app"; "select content on [] website or app"; "views an item"; "views their shopping cart")[16] and also allows for "collect[ing] additional information that Google Analytics does not collect automatically[,]" through "custom events."[17]

51.    A "session" is "the period from when a user visits [a] website or app to when they leave [said] website or app[.]"[18]   "When a session starts, Google automatically collects a session_start event and generates a session ID (ga_session_id) and session number (ga_session_number)[.]"[19]

---

[12] *Id.*

[13] *Id.*

[14] GOOGLE, TRAFFIC-SOURCE DIMENSIONS,
https://support.google.com/analytics/answer/11080067.

[15] GOOGLE, SET UP EVENTS,
https://developers.google.com/analytics/devguides/collection/ga4/events.

[16] GOOGLE, [GA4] RECOMMENDED EVENTS,
https://support.google.com/analytics/answer/9267735.

[17] GOOGLE, [GA4] CUSTOM EVENTS,
https://support.google.com/analytics/answer/12229021.

[18] GOOGLE, TRAFFIC-SOURCE DIMENSIONS,
https://support.google.com/analytics/answer/11080067.

[19] GOOGLE, [GA4] ABOUT ANALYTICS SESSIONS,
https://support.google.com/analytics/answer/9191807.

52.     Finally, to discern when "two different [users] interact with [a] website[,] … Google Analytics identifies an individual user based on [Google Analytics] reporting identit[ies.]"[20]   Reporting identities are combinations of "identifiers … called *identity spaces*" – namely, "User-ID"; "user-provided data"; "device ID"; and "modeling[.]"[21]

- A "User-ID" is a "persistent ID[,]"[22] consisting of a unique combination of up to "256 characters[,]"that is created by website operators and "assign[ed] and consistently reassign[ed] … to [] users[,] … typically [] during login."[23]

- "User-provided data" consists of contact details such as "email, phone, name and address[,]" provided by website users, that "is [] matched with other Google data … to improve the accuracy of [] measurement data and power enhanced Analytics capabilities."[24]   Although these personal details are "hashed,"[25] the reality is that, even in hashed form, they are traceable to individuals.[26]

---

[20] GOOGLE, TRAFFIC-SOURCE DIMENSIONS, https://support.google.com/analytics/answer/11080067.

[21] GOOGLE, [GA4] REPORTING IDENTITIES, https://support.google.com/analytics/answer/10976610.

[22] *Id.*

[23] GOOGLE, [GA4] MEASURE ACTIVITY ACROSS PLATFORMS WITH USER-ID, https://support.google.com/analytics/answer/9213390.

[24] GOOGLE, [GA4] USER-PROVIDED DATA COLLECTION, https://support.google.com/analytics/answer/14077171.

[25] *Id.*

[26] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be

- A "device ID" is a "browser-based or mobile-app-based identifier[.]"[27] "On a website, device ID gets its value from the client ID property of the _ga cookie. In an iOS or Firebase app, device ID gets its value from the app-instance ID, which identifies a unique installation of the app."[28]

- "Modeling" uses "machine learning to model the behavior of users who decline analytics cookies based on the behavior of similar users who accept analytics cookies."[29]

53. When Google uses its wiretaps on Website users' communications, the wiretaps are not like tape recorders or "tools" used by one party to record the other. Instead, Google—a separate and distinct entity from the parties to the conversations—uses the wiretaps to eavesdrop upon, record, extract data from, and analyze conversations to which it is not a party. Google itself, collects the contents of said conversations. That data is then analyzed by Google before being provided to any entity that was a party to the conversations (like Defendant).

---

used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); Steven Englehardt et al., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, at 122, available at https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating."); MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[27] GOOGLE, [GA4] DEVICE ID, https://support.google.com/analytics/answer/9356035.

[28] *Id.*

[29] GOOGLE, [GA4] BEHAVIORAL MODELING FOR CONSENT MODE, https://support.google.com/analytics/answer/11161109.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    24

54.     Google has the capability to use the contents of conversations it collects through its wiretaps for its own purposes.

### B.     Meta

55.     Meta wiretaps the Website with trackers associated with the "Meta Pixel."[30]  According to Meta, "[t]he Meta Pixel is a snippet of JavaScript code that allows [clients] to track visitor activity on [their] website[s]. It works by loading a small library of functions which [] can [be] use[d] whenever a site visitor takes an action (called an event) that [a client] want[s] to track (called a conversion)."[31]  Meta offers a menu of "standard events" that can be tracked, including what content a visitor views or purchases.[32]  Advertisers can also create their own tracking parameters by building a "custom event."[33]  Thus, the Meta Pixel helps "understand[] the actions people take on [a] website."[34]

56.     The Meta Pixel "relies on Facebook cookies, which enable [Meta] to match [] website visitors to their respective Facebook User accounts."[35]  Additionally, "[w]ith advanced matching, [website operators] can send [Meta] hashed customer information along with [] Meta Pixel events, which can help … match more of the

---

[30] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[31] *Id.*

[32] META, SPECIFICATIONS FOR META PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655.  *See also* META, STANDARD EVENTS, https://developers.facebook.com/docs/meta-pixel/reference.

[33] META, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005; *see also* META, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.

[34] *Id.*

[35] META, META PIXEL GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.

---

conversions that happen on your website to people on Meta."[36]

57.    This is highly useful for marketing and advertising.  Specifically, the Meta Pixel can be used to help "measure ad effectiveness"; "define custom audiences for ad targeting"; and support "Advantage+ catalog ads campaigns[.]"[37]

58.    With respect to measuring ad effectiveness, "[t]rack[ing ] website visitors' actions[,] also known as conversion tracking[,] ... can be used to … calculate [] return[s] on ad investment[s]."[38]  "In [the] Meta Ads Manager, [website operators] can see how many conversions happened as a result of [their] Meta ads."[39]  This includes "cross-device reporting, which lets [advertisers] see cross-device conversions across apps and the web (for example, if a customer sees an ad for a product on their mobile phone, but decides to buy it later on their desktop computer)."[40]

59.    A "custom audience is an ad targeting option"[41] that can be used by advertisers, like Defendant, "to find people most likely to respond to [their] ad[s]."[42] Clients can "[c]reate [an] online audience based on the traits of who [they] want to see [their] ad[s], and narrow down [their] ad[s'] audience[s] by interests, gender or location and use ad targeting to find the people most likely to take action.  Once [an] ad starts running, [Meta's] system will learn who is engaging with it and, over time,

---

[36] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668?id=1205376682832142.

[37] META, META PIXEL, https://developers.facebook.com/docs/meta-pixel.

[38] META, CONVERSION TRACKING, https://developers.facebook.com/docs/meta-pixel/implementation/conversion-tracking.

[39] META, USE CONVERSION TRACKING TO MEASURE RESULTS, https://www.facebook.com/business/help/339239069606476.

[40] Id.

[41] META, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227.

[42] META, AD TARGETING, https://www.facebook.com/business/ads/ad-targeting.

narrow [the] audience [to help] reach more of the right people."[43]   Advertisers can target, *inter alia*, "[n]ew customers with specific interests or from a specific location"; "[p]eople who have already shown an interest in [a client's] business"; and "[p]eople who share interests with [a client's] current customers[]" (i.e., "Lookalike Audience[s]").[44]

60.    "Advantage+ catalog ads are dynamically created by populating an ad template with product information found in a data feed. This allows [Meta clients] to create thousands of ads without having to configure each of them individually."[45] Clients "can also use Advantage+ catalog ads to target visitors based on how they have interacted with [their] website in the past."[46]

61.    Meta has the capability to use the contents of conversations it collects through its wiretaps for its own purposes.

### C.    Microsoft

62.    Microsoft wiretaps the Website with trackers associated with the Microsoft Advertising Universal Event Tracking tag ("UET tag").[47]   According to Microsoft, the UET tag "records what customers do on your website and sends that information to Microsoft Advertising."[48]

63.    "With conversion tracking, you can track what people do once they get to your website."   The "UET tag on your website can track multiple types of conversions."   Website conversions include "Destination URL[,]" which "[c]ount[s]

---

[43] *Id.*

[44] *Id.*

[45] META, META PIXEL FOR ADVANTAGE+ CATALOG ADS, https://developers.facebook.com/docs/meta-pixel/get-started/advantage-catalog-ads.
[46] *Id.*

[47] *See* MICROSOFT ADVERTISING, *What is UET and how can it help me?*, https://help.ads.microsoft.com/#apex/ads/en/56681/2.
[48] *Id.*

---

user visits to specific webpages …. Examples: Confirmation page after purchase, …."[49]  Website conversions also include "Event[,]," which "[c]ount[s] every time someone completes a specific action…."[50]

64.    Microsoft explains that "Universal Event Tracking (UET) is the key that unlocks powerful Microsoft Advertising features such as … audience targeting, and automated bidding bid strategies."[51]

65.    "Audiences help [advertisers] reach new and existing customers based on their purchase intent signals and interests, how they've engaged with [a] business and interacted with [its] ads before, their LinkedIn profile, as well as their active web searches."[52]

66.    "Automated bid strategies from Microsoft Advertising give [] flexible, advanced tools to … maximize [] ad spend."[53]  "With auto-bidding strategies, Microsoft Advertising automatically adjusts [] bids in real time to meet [] performance goals using [] deep analysis of patterns in searches, clicks, and conversions."[54]

67.    Microsoft has the capability to use the contents of conversations it collects through its wiretaps for its own purposes.

---

[49] MICROSOFT ADVERTISING, *What are conversion goals and goal types?*, https://help.ads.microsoft.com/#apex/ads/en/56709/2 (last accessed Feb. 9, 2026).

[50] *Id.*

[51] MICROSOFT ADVERTISING, *What is UET and how can it help me?*, https://help.ads.microsoft.com/#apex/ads/en/56681/2 (last accessed Feb. 9, 2026).

[52] MICROSOFT ADVERTISING, *What are my options for audiences?*, https://help.ads.microsoft.com/#apex/ads/en/56892/1 (last accessed Feb. 9, 2026).

[53] MICROSOFT ADVERTISING, *Benefits of Universal Event Tracking*, https://about.ads.microsoft.com/en/tools/performance/conversion-tracking#automated-bidding (last accessed Feb. 9, 2026).

[54] MICROSOFT ADVERTISING, *Let Microsoft Advertising manage your bids with bid strategies*, https://help.ads.microsoft.com/#apex/ads/en/56786/1 (last accessed Feb. 9, 2026).

## V.      Defendant Aids, Agrees With, Employs, and Otherwise Enables The Third Parties to Wiretap Users' Communications

### A.      Google

68.      Google, as enabled by Defendant, contemporaneously intercepts and/or otherwise obtains the following communications on the Purchase and Screening Website.

69.      As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users entered hearingshop.com to browse between various hearing health products (here, "Shop Sony OTC Hearing Aids, Accessories & More | Hearing Shop"; "hearingshop.com").

| | |
|---|---|
| dt | Shop Sony OTC Hearing Aids, Accessories & More \| Hearing Shop |
| dl | https://www.hearingshop.com/ |
| sid | 1761840276 |
| sct | 2 |
| seg | 1 |
| _tu | AAI |
| en | page_view |

//

//

//

//

//

//

//

//

//

//

//

70.     As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users clicked on a particular hearing health product, and the name of the that product (here, "audinell-earcare-gel-5-ml-tube").    As further shown by the yellow highlights, Google intercepts and/or otherwise obtains the product type (here, "product_type…Care…Cleaning").

| dt | Audinell%20Earcare%20Gel%20(5%20mL%20tube)%20%7C%20Hearing%20Shop |
|---|---|
| dl | https%3A%2F%2Fwww.hearingshop.com%2Fproducts%2Faudinell-earcare-gel-5-ml-tube%3F_pos%3D7%26_fid%3D33ce6f9e9%26_ss%3Dc |
| sid | 1761840276 |
| sct | 2 |
| seg | 1 |
| dr | https%3A%2F%2Fwww.hearingshop.com%2Fcollections%2Fadaptive-assistive-hearing-products%3Ffilter.p.product_type%3DCare%2520%2526%2520Cleaning |

71.     As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users clicked to checkout (here, "Checkout - HearUSA Hearing Shop").

| dt | Checkout - HearUSA Hearing Shop |
|---|---|
| dl | https://www.hearingshop.com/checkouts/cn/hWN4idcaRnNmzb7L5AztWI7u/en-us?skip_shop_pay=true&checkout_queue_token=A6dOfdeibN4F8jQgvP9-O9nIZdJAn0EsRHS4bueFRaeirm-DmB7o0QjSrMotx_uX6BHWW7Gk7CvWU3rmMBbvCXIWgwbkeEpEee66upJxHpOnvQOIPeyc3cnkPPuZj8iHeA%3D%3D&shop_pay_checkout_as_guest=true |

72.     As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users actually made a purchase (here, "Thank you for your purchase!"; "purchase").

| dl | https://www.hearingshop.com/checkouts/cn/hWN4idcaRnNmzb7L5AztWI7u/en-us/thank-you |
|---|---|
| dt | Thank you for your purchase! - HearUSA Hearing Shop - Checkout |
| _tu | AAI |
| en | purchase |
| _c | 1 |
| _ee | 1 |
| pr1 | idshopify_US_7744406192341_43215383462101~nmAudinell Earcare Gel (5 mL tube)~brAudinell~caCare & Cleaning~pr3.1~qt1 |

73. As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users clicked to take the two-minute hearing screening (here, "2-minute hearing test").



74. As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Google intercepts and/or otherwise obtains the fact that users answered various questions pertaining to their hearing health, as well as users' answers to those particular questions (here, *e.g.*, the user "Agree[d]" that they "have...trouble...hearing...conversations...in...a...noisy...background...such...as... a...crowded...room...or...restaurant").

```
en=involve_me_QuestionProgress&_ee=1&ep.anonymize_ip=false&ep.involve_me_ProjectName=2-minute%20hearing%20test&ep.involve_me_QuestionUniqu
eID=I8wurlh&ep.involve_me_QuestionText=I%20have%20a%20problem%20with%20hearing%20over%20the%20telephone.&_et=5132
en=involve_me_QuestionAnswer&_ee=1&ep.anonymize_ip=false&ep.involve_me_ProjectName=2-minute%20hearing%20test&ep.involve_me_ Answer=Agree&
epn.involve_me_AnswerScore=3&ep.involve_me_AnswerCorrect=false&ep.involve_me_QuestionText=I%20have%20a%20problem%20with%20hearing%20ove
r%20the%20telephone.&ep.involve_me_ImageURL=&ep.involve_me_QuestionUniqueID=I8wurlh&_et=300
```

75.    As shown by the yellow highlights in the below screenshots of Website transmissions, Google intercepts and/or otherwise obtains the fact that Website users entered their information to receive a copy of their hearing health results, as well as users'         particular         results         and/or         diagnostic         (here, "Outcome…Severe…Hearing…Loss"; "CorrectlyAnswered=0").

```
en=involve_me_ContactFormFilled&_ee=1&ep.anonymize_ip=false&ep.involve_me_ProjectName=2-minute%20hearing%20test&ep.involve_me_PageNumber
=6&ep.involve_me_ContactFields=firstName%2ClastName%2Cemail&_et=30319
en=involve_me_ProjectCompleted&_ee=1&ep.anonymize_ip=false&ep.involve_me_CalculatorResult=&ep.involve_me_ OutcomeName=Severe%20Hearing%20L
oss&ep.involve_me_CorrectlyAnswered=0&epn.involve_me_FinalScore=17&ep.involve_me_ProjectName=2-minute%20hearing%20test&ep.involve_me_IsEmb
ed=true&_et=730
```

### B.    Meta

76.    Meta, as enabled by Defendant, contemporaneously intercepts and/or otherwise obtains the following communications on the Websites.

77.    As shown by the yellow highlights in the below screenshots of Appointment Website transmissions, Meta intercepts and/or otherwise obtains the fact that Website users visited the Appointment Website (here, "hearusa.com"; "PageView").

| id | 3272773632991201 |
|----|------------------|
| ev | PageView |
| dl | https://www.hearusa.com |
| rl | https://www.google.com |

78.    As shown by the yellow highlights in the below screenshots of Appointment Website transmissions, Meta intercepts and/or otherwise obtains the fact that users booked an appointment (here, "appointment_book").

| id | 3272773632991201 |
|----|------------------|
| ev | appointment_book |
| dl | https://www.hearusa.com |
| rl | https://www.google.com |

79.     As shown by the yellow highlights in the below screenshots of Purchase and Screening Website transmissions, Meta intercepts and/or otherwise obtains the fact that users selected a particular hearing health product from hearingshop.com, and the price of that product (here, "product"; "$3.10"; "hearingshop.com").



### C.     Microsoft

80.     Microsoft, as enabled by Defendant, contemporaneously intercepts and/or otherwise obtains the following communications on the Appointment Website.

81.     As shown by the yellow highlights in the below screenshots of Appointment Website transmissions, Microsoft intercepts and/or otherwise obtains the fact that users visited progressed to the page where they may search for a Hearing Center near them (here, "hearusa.com/hearing-centers/").

82.     As shown by the yellow highlights in the below screenshot of Appointment Website transmissions, Microsoft intercepts and/or otherwise obtains the fact that users selected a particular Hearing Center and the address of that particular Hearing Center (here, "hearing-centers/details/us/92126/san-diego/hearusa-mira-mesa/", as in the HearUSA Mira Mesa, located in San Diego, CA, 92126).

| mid | c705923e-6b38-47e5-b18d-831f184e1137 |
|---|---|
| bo | 1 |
| sid | 587d9c80b5a111f0a5289b45f8f7f290 |
| vid | af8e4670b33a11f0a8263f5c8f4c4197 |
| vids | 0 |
| msclkid | N |
| page_path | /hearing-centers/details/us/92126/san-diego/hearusa-mira-mesa/70605/ |
| tpp | 1 |
| spa | Y |
| p | https://www.hearusa.com/hearing-centers/details/us/92126/san-diego/hearusa-mira-mesa/70605/ |
| uach | pv=19.0.0 |
| pi | 918639831 |
| lg | en-US |
| sw | 1920 |
| sh | 1080 |
| sc | 24 |
| tl | Hearing center locations: Book hearing appointment | HearUSA |
| kw | Shops, Locations |
| r | https://www.hearusa.com/hearing-centers/ |
| evt | pageLoad |

83.     As shown by the yellow highlight in the below screenshot of Appointment Website transmissions, Microsoft intercepts and/or otherwise obtains the fact users booked an appointment (here, "booking-confirmation-hearing-evaluation").

| mid | 80577110-e5aa-417f-a108-77f6fe45cd9f |
|---|---|
| bo | 1 |
| sid | 587d9c80b5a111f0a5289b45f8f7f290 |
| vid | af8e4670b33a11f0a8263f5c8f4c4197 |
| vids | 0 |
| msclkid | N |
| page_path | /book-appointment/booking-confirmation-hearing-evaluation/ |
| tpp | 1 |
| spa | Y |
| p | https://www.hearusa.com/book-appointment/booking-confirmation-hearing-evaluation/ |
| uach | pv=19.0.0 |
| pi | 918639831 |
| lg | en-US |
| sw | 1920 |
| sh | 1080 |
| sc | 24 |
| tl | Book Appointment |
| r | https://www.hearusa.com/book-appointment/book-appointment/ |
| evt | pageLoad |

## VI.    Defendant Enables the Third Parties to Pair the Above Data with Users' Identities

84.    As discussed *supra*, § IV, the Google, Meta, and Microsoft tracking technologies at issue can pair wiretapped data (including hearing health medical information) with users' identities.

### A.    Google

85.    Through Google cookies, Google can identify individual Purchase and Screening Website users and link their browsing sessions to identifiers within the Google Analytics identity spaces.[55]

86.    A cookie is a "small text file (up to 4KB) created by a website that is stored in the user's computer either temporarily for that session only or permanently in storage (persistent cookie)."[56] Persistent cookies can be used to "track user behavior across different sites. They store information such as geographic location, device specifications, and specific actions taken on the website."[57] Thus, together, the Google cookies allow Google Analytics to "'remember' what a user has done on previous pages [and their] interactions with the [W]ebsite."[58]

---

[55] *See, e.g.*, GOOGLE, OUR ADVERTISING AND MEASUREMENT COOKIES, https://business.safety.google/adscookies/; GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https:// developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage; OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html; GOOGLE, [GA4] REPORTING IDENTITIES, https://support.google.com/analytics/answer/10976610.

[56] PC MAGAZINE, COOKIE TABLE, https://www.pcmag.com/encyclopedia/term/cookie.

[57] COOKIEBOT, WHAT ARE TRACKING COOKIES AND HOW DO THEY WORK?, https://www.cookiebot.com/en/tracking-cookies/.

[58] GOOGLE, GOOGLE ANALYTICS COOKIE USAGE ON WEBSITES, https://web.archive.org/web/20240303080533/https://developers.google.com/analytics/devguides/collection/analyticsjs/cookie-usage.

---

87.    The following image confirms that, when a user accesses the Purchase and Screening Website while logged into a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the AEC; APISID; DV; _ga; HSID; NID; SAPISID; _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDCC; _Secure-1PSIDTS; _Secure-3PAPISID; _Secure-3PSID; _Secure-3PSIDCC; _Secure-3PSIDTS; SID; SIDCC; and SSID cookies:

| Name | Value | Domain ▲ | Path | Expir... | Size | Http... | Secure | Sam... | Parti... | Cros... | Prior... |
|------|-------|----------|------|----------|------|---------|--------|--------|----------|---------|----------|
| __Secure-1PAPISID | MCozOwCa_uqgbbEv/A41t... | .google.com | / | 2027... | 51 | | ✓ | | | | High |
| __Secure-1PSID | g.a0006giBxsPCuT_2xMLk... | .google.com | / | 2027... | 167 | ✓ | ✓ | | | | High |
| __Secure-1PSIDCC | AKEyXzWoMpOerUI1Ulcs7... | .google.com | / | 2027... | 90 | ✓ | ✓ | | | | High |
| __Secure-1PSIDTS | sidts-CjIB7I_69Hm3jCy7ap... | .google.com | / | 2027... | 94 | ✓ | ✓ | | | | High |
| __Secure-3PAPISID | MCozOwCa_uqgbbEv/A41t... | .google.com | / | 2027... | 51 | | ✓ | None | | | High |
| __Secure-3PSID | g.a0006giBxsPCuT_2xMLk... | .google.com | / | 2027... | 167 | ✓ | ✓ | None | | | High |
| __Secure-3PSIDCC | AKEyXzWAUOU8JC0Vonw... | .google.com | / | 2027... | 88 | ✓ | ✓ | None | | | High |
| __Secure-3PSIDTS | sidts-CjIB7I_69Hm3jCy7ap... | .google.com | / | 2027... | 94 | ✓ | ✓ | None | | | High |
| __Secure-BUCKET | CN8E | .google.com | / | 2026... | 19 | ✓ | ✓ | | | | Med... |
| __Secure-STRP | AD6DogtcVBrmdQ3HG-XX... | .google.com | / | 2026... | 113 | ✓ | ✓ | Strict | | | Med... |
| AEC | AaJma5sGbDAi1wF1RPb2o... | .google.com | / | 2026... | 62 | ✓ | ✓ | Lax | | | High |
| APISID | kSIXyF-2Aru6aFSG/AOnDF... | .google.com | / | 2027... | 40 | | | | | | High |
| HSID | ACbBLJe2H_vDEgbUI | .google.com | / | 2027... | 21 | ✓ | | | | | High |
| NID | 528=B_hRNFM9KIK2D85v... | .google.com | / | 2026... | 767 | ✓ | ✓ | None | | | Med... |
| SAPISID | MCozOwCa_uqgbbEv/A41t... | .google.com | / | 2027... | 41 | | ✓ | | | | High |
| SID | g.a0006giBxsPCuT_2xMLk... | .google.com | / | 2027... | 156 | | | | | | High |
| SIDCC | AKEyXzXend1TzFfz_rJhOx... | .google.com | / | 2027... | 79 | | | | | | High |
| SSID | AsSSWhZzB0VqcTEPv | .google.com | / | 2027... | 21 | ✓ | ✓ | | | | High |
| __utmzz | utmcsr=google|utmcmd=... | .hearingshop.com | / | 2026... | 74 | | | | | | Med... |
| __utmzses | 1 | .hearingshop.com | / | Sessi... | 11 | | | | | | Med... |
| _fbp | fb.1.1770685362996.71103... | .hearingshop.com | / | 2026... | 41 | | | Lax | | | Med... |
| _ga | GA1.1.1168328052.177068... | .hearingshop.com | / | 2027... | 30 | | | | | | Med... |
| _ga_2H7RVDE97H | GS2.1.s1770685722$o1$g0... | .hearingshop.com | / | 2027... | 59 | | | | | | Med... |
| DV | o87nEJbC7EwiwDAyltdn9w... | www.google.com | / | 2026... | 49 | | | | | | Med... |

88.    The AEC cookie "ensure[s] that requests within a browsing session are made by the user, and not by other sites[,]" and has a lifespan on 6 months.[59]

89.    The APISID; HSID; SAPISID; SID; SIDCC; and SSID cookies are marketing cookies that, *inter alia*, "[a]djust[] the ads that appear in Google Search" and all have a lifespan of 2 years.[60]

---

[59] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.
[60] *Id.*

90.    The DV marketing cookie "is used to collect website statistics and track conversion rates and Google ad personalization" and has a lifespan of one year.[61]

91.    The _ga cookie is an "ID used to identify users" and has a lifespan of 2 years.[62]

92.    The NID marketing cookie "is used to collect website statistics and track conversion rates and Google ad personalization[,]" and has a lifespan of 1 year.[63]

93.    The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDCC; and _Secure-1PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[64] The _Secure-1PAPISID; _Secure-1PSID; _Secure-1PSIDCC; and _Secure-1PSIDTS cookies have a lifespan of 2 years.[65]

94.    The _Secure-3PAPISID is a marketing cookie that "[p]rofiles the interests of website visitors to serve relevant and personalised ads through retargeting" and has a lifespan of 2 years.[66]

95.    The _Secure-3PSID cookie is a "[t]argeting cookie[ u]sed to profile the interests of website visitors and display relevant and personalised Google ads" and has a lifespan of 2 years.[67]

96.    The _Secure-3PSIDCC and _Secure-3PSIDTS cookies are "[t]argeting cookie[s u]sed to create a user profile and display relevant and personalised Google Ads to the user."[68]

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

97.     The _Secure-3PSIDCC and _Secure-3PSIDTS cookies have a lifespan of 2 years.[69]

98.     Even when a user accesses the Purchase and Screening Website while not logged into a Google account, the Google tracking technologies on the Website compel that user's browser to transmit several Google cookies, including the AEC; DV; _ga; and NID cookies:

| Name | Value | Domain | ▲ | Path | Expir... | Size | Http... | Secure | Sam... | Parti... | Cros... | Prior... |
|------|-------|--------|---|------|----------|------|---------|--------|--------|----------|---------|----------|
| __Secure-BUCKET | CN8E | .google.com | | / | 2026... | 19 | ✓ | ✓ | | | | Med... |
| __Secure-STRP | AD6DogtcVBrmdQ3... | .google.com | | / | 2026... | 113 | | ✓ | Strict | | | Med... |
| AEC | AaJma5sGbDAi1wF... | .google.com | | / | 2026... | 62 | ✓ | ✓ | Lax | | | Med... |
| NID | 528=esQLWbtBkAss... | .google.com | | / | 2026... | 462 | ✓ | ✓ | None | | | Med... |
| __utmzz | utmcsr=google|utm... | .hearingshop.com | | / | 2026... | 74 | | | | | | Med... |
| __utmzzses | 1 | .hearingshop.com | | / | Sessi... | 11 | | | | | | Med... |
| _ga | GA1.1.1168328052.... | .hearingshop.com | | / | 2027... | 30 | | | | | | Med... |
| _ga_2H7RVDE97H | GS2.1.s1770685722.... | .hearingshop.com | | / | 2027... | 59 | | | | | | Med... |
| DV | k1KtAbHo4MInwPh... | www.google.com | | / | 2026... | 49 | | | | | | Med... |

### B.    Meta

99.     Through Facebook cookies, Meta can identify individual Appointment Website and Purchase and Screening Website users by their respective Facebook accounts.  Through advanced matching, Meta can also identify individual Purchase and Screening Website users by the personal information they provide (i.e., name, email address, phone number, etc.).

100.    The following images confirm that, when a user accesses the Appointment Website and Purchase and Screening Websites while logged into Facebook, the Meta tracking technologies on the Websites compel that user's browser to transmit the _fbp[70] cookie:

---

[69] *Id.*

[70] The Meta Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—*i.e.*, the Website. PC MAGAZINE, FIRST-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/first-party-cookie.  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook. PC MAGAZINE, THIRD-PARTY COOKIE, https://www.pcmag.com/encyclopedia/term/third-party-cookie.  The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.  Pictured here is the _fbp cookie, sent as a first-party cookie.

| Name | Value | Domain ▲ | Pa... | Expi... | Size | Htt... | Sec... | Sam... | Part... | Cro... | Prio... |
|------|-------|----------|-------|---------|------|--------|--------|--------|---------|--------|---------|
| _fbp | fb.1.1770684299137.95745827927796236 | .hearusa... | / | 202... | 40 | | | Lax | | | Me... |

| Name | Value | Domain ▲ | Path | Expire... | Size | Ht... | Secure | Sam... | Parti... | Cros... | Prior... |
|------|-------|----------|------|-----------|------|-------|--------|--------|----------|---------|---------|
| _fbp | fb.1.1770685362996.711036812404935215 | .hearingshop.com | / | 2026-... | 41 | | | Lax | | | Med... |

101.    The _fbp cookie contains, at least, a value that uniquely identifies a browser.[71] The _fbp has a lifespan of ninety days.[72]

102.    When an Appointment Website or Purchase and Screening Website user's browser has recently logged out of an account, Facebook still compels the user's browser to send the _fbp cookie:



| Name | Value | Do... | Path | Expi... | Size | Htt... | Sec... | Sam... | Part... | Cro... | Prio... |
|------|-------|-------|------|---------|------|--------|--------|--------|---------|--------|---------|
| _fbp | fb.1.1770684299137.9574582792... | .hea... | / | 202... | 40 | | | Lax | | | Me... |

| Name | Value | Domain ▲ | Pa... | Expir... | Size | Http... | Secure | Sam... | Parti... | Cros... | Prior... |
|------|-------|----------|-------|---------|------|---------|--------|--------|----------|---------|---------|
| _fbp | fb.1.1770685362996.711036812404935215 | .hearingshop.com | / | 2026... | 41 | | | Lax | | | Med... |

103.    That Defendant disclosed to Meta the user's "Facebook browser ID value [] stored in the _fbp browser cookie"[73] is also shown by the yellow highlight in the below Appointment Website transmission (here, "fb.1.1761572508568.

---

[71] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ ("Cookie[:] _fbp[.] Description[:] These cookies identify browsers for businesses using our Meta Products for the purposes of providing advertising and site analytics services."). *See also* FACEBOOK, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/customer-information-parameters#fbp ("The Facebook browser ID value is stored in the _fbp browser cookie[.]").

[72] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.

[73] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com /docs/marketing-api/conversions-api/parameters/customer-information-parameters/. *See also* META, CLICKID AND THE FBP AND FBC PARAMETERS, https://developers.facebook.com/docs/marketing-api/conversions-pi/parameters/fbp-and-fbc.

60534734137116874").   According to Meta, browser ID values are formatted as "fb.${subdomain_index}.${creation_time}.$ {random_number}."[74]   Meta pairs the "fbp" value with Website users' medical information (here, "appointment_book").

| ev | appointment_book |
|----|------------------|
| dl | https://www.hearusa.com |
| rl | https://www.google.com |
| if | false |
| ts | 1761838807043 |
| sw | 1920 |
| sh | 1080 |
| v | 2.9.239 |
| r | stable |
| a | tmSimo-GTM-WebTemplate |
| ec | 4 |
| o | 12316 |
| fbp | fb.1.1761572508568.60534734137116874 |

104.   Per the Meta "Cookies Policy," the "'_fbp' cookie *identifies browsers* for the purposes of providing advertising and site analytics services[.]"[75]   Specifically, the browser ID value, along with other "customer information parameters[,]" is ultimately "matched to Meta accounts."[76]

105.   Defendant also uses "Advanced Matching."   With Advanced Matching, Defendant's Meta Pixels "look for recognizable form field and other sources on [the] website that contain information such as first name, last name and email."[77]   That information is recorded, "along with the event, or action, that took place."[78]

---

[74] META, CUSTOMER INFORMATION PARAMETERS, https://developers.facebook.com/ docs/marketing-api/conversions-api/parameters/customer-information-parameters/.

[75] META, COOKIES POLICY, https://www.facebook.com/privacy/policies/cookies (emphasis added).

[76] FACEBOOK, ABOUT EVENT MATCH QUALITY, https://www.facebook.com/business/help/765081237991954.

[77] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/ business/help/611774685654668.

[78] *Id.*

---

106.  Specifically,  as  part  of  Advanced  Matching,  Defendant  enabled "Automatic Advanced Matching."  That means Defendant configured the pixel to scan form fields containing a user's email address, first name, last name, phone number, gender, zip code, city and state.[79]  The highlighted line below shows that Defendant enabled Automatic Matching on the Purchase and Screening Website.

```
fbq.loadPlugin("cookie");
instance.optIn("3272773632991201", "FirstPartyCookies", true);
fbq.loadPlugin("automaticmatchingforpartnerintegrations");
instance.optIn("3272773632991201", "AutomaticMatchingForPartnerIntegrations", true);
config.set(null, "batching", {
    "batchWaitTimeMs": 10,
    "maxBatchSize": 10
```

107.  Thus,  Meta,  as  enabled  by  Defendant,  contemporaneously  intercepts users' names, email address, phone numbers, and/or other personal details using the Meta Pixel on various pages of the Purchase and Screening Website.  Although these personal details are "hashed,"[80] the reality is that, even in hashed form, they are traceable to individuals.[81]

---

[79] *See* META, ADVANCED MATCHING, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching; META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[80] *Id.*

[81] *See, e.g.*, FEDERAL TRADE COMMISSION, DOES HASHING MAKE DATA "ANONYMOUS"?, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2012/04/does-hashing-make-data-anonymous ("[H]ashing is vastly overrated as an 'anonymization' technique … the casual assumption that hashing is sufficient to anonymize data is risky at best, and usually wrong."); FEDERAL TRADE COMMISSION, NO, HASHING STILL DOESN'T MAKE YOUR DATA ANONYMOUS, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/07/no-hashing-still-doesnt-make-your-data-anonymous ("[H]ashes aren't 'anonymous' and can still be used to identify users, and their misuse can lead to harm. Companies should not act or claim as if hashing personal information renders it anonymized."); STEVEN ENGLEHARDT ET AL., I NEVER SIGNED UP FOR THIS! PRIVACY IMPLICATIONS OF EMAIL TRACKING, https://petsymposium.org/2018/files/papers/issue1/paper42-2018-1-source.pdf ("[H]ashing of PII, including emails, is not a meaningful privacy protection. This is folk knowledge in the security community, but bears repeating.");

---

108.   Defendant discloses this information to Meta so that Meta can better match Website visitors to their Facebook profiles, thereby helping Defendant "[i]ncrease the number of attributed conversions," "[i]ncrease [their] Custom Audience size," and "[d]ecrease the cost per conversion."[82]

### C.   Microsoft

109.   Through Microsoft cookies, Microsoft can identify individual Appointment Website users.

110.   The images contained *supra* confirm that, when a user accesses the Appointment Website, the Microsoft tracking technologies on the Website compel that user's browser to transmit the _uetsid and _uetvid cookies.

111.   The _uetsid marketing cookie is "used … to determine what ads should be shown that may be relevant to the end user perusing the site."[83]

112.   The _uetvid marketing cookie "is a cookie utilised by Microsoft Bing Ads and is a tracking cookie. It allows us to engage with a user that has previously visited our website."[84]  The _uetvid marketing cookie has a lifespan of sixteen days.[85]

113.   The _uetvid marketing cookie is used in tandem with what is known as a "vid" value.

---

MARTECH, FTC PRIVACYCON: YOUR EMAIL ADDRESS IS LEAKING AND VULNERABLE, https://martech.org/ftc-privacycon-email-address-leaking-vulnerable ("Hashing is an algorithmic process that turns [information] into a gibberish label[.] … Although gibberish, it's unique, so it can be employed as an anonymized identifier. It's supposed to be one-way, meaning that you can't turn the gibberish back into the [original form]. Wrong, says Englehardt and his colleagues.").

[82] META, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668.

[83] OPEN COOKIE DATABASE, https://jkwakman.github.io/Open-Cookie-Database/open-cookie-database.html.

[84] *Id.*

[85] *Id.*

---

114. According to Microsoft, a "vid" is a "unique, anonymized visitor ID, assigned by UET, representing a unique visitor. UET stores this data in a first-party cookie named '_uetvid'."[86]

115. That Microsoft pairs the "vid" with Website users' hearing health medical information is evinced by the following transmission.

| | |
|---|---|
| mid | 80577110-e5aa-417f-a108-77f6fe45cd9f |
| bo | 1 |
| sid | 587d9c80b5a111f0a5289b45f8f7f290 |
| vid | af8e4670b33a11f0a8263f5c8f4c4197 |
| vids | 0 |
| msclkid | N |
| page_path | /book-appointment/booking-confirmation-hearing-evaluation/ |
| tpp | 1 |
| spa | Y |
| p | https://www.hearusa.com/book-appointment/booking-confirmation-hearing-evaluation/ |
| uach | pv=19.0.0 |
| pi | 918639831 |
| lg | en-US |
| sw | 1920 |
| sh | 1080 |
| sc | 24 |
| tl | Book Appointment |
| r | https://www.hearusa.com/book-appointment/book-appointment/ |
| evt | pageLoad |

## CLASS ALLEGATIONS

116. Plaintiff seeks certification of the following class: all persons in the United States who, during the class period, had their PII and/or PHI improperly intercepted by or otherwise disclosed to Google, Meta, or Microsoft, as a result of using the Websites (the "Class" or "Nationwide Class").

117. Plaintiff also seeks to represent a subclass consisting of all California residents who, during the class period, had their PII and/or PHI improperly intercepted

---

[86] MICROSOFT ADVERTISING, *FAQ: Universal Event Tracking*, https://help.ads.microsoft.com/#apex/ads/en/53056/2 (last accessed February 9, 2026).

by or otherwise disclosed to Google, Meta, or Microsoft, as a result of using the Websites (the "Subclass" or "California Subclass") (the Class and Subclass collectively, the "Classes").

118.   Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

119.   The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

120.   The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

121.   **Numerosity/Ascertainability:**  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class. The identity of such membership is readily ascertainable from Defendant's records and non-party records, such as those of Google, Meta, and/or Microsoft.

122.   **Typicality:**  The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, utilized

Defendant's Website, and had their confidential electronic communications intercepted and/or disclosed to Google, Meta, or Microsoft.

123.  **Adequate Representation:**   Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.  Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

124.  **Commonality and Predominance:**   There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; CIPA §§ 631 and 632; Cal. Civ. Code § 56.10, and Plaintiff's and Class Members' privacy rights as provided by the California Constitution and common law, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, prejudgment interest and costs of this suit.

125.  **Superiority:**  Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued

individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the Federal Wiretap Act,
### 18 U.S.C. § 2510, *et seq.*
### (On Behalf of Plaintiff, the Nationwide Class and California Subclass)

126.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Classes.

127.   The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication.  18 U.S.C. § 2511(a).

128.   Further, the Federal Wiretap Act makes it unlawful for a person to intentionally disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c).

129.   Further, the Federal Wiretap Act makes it unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(d).

130.   The Federal Wiretap Act protects both the sending and receiving of communications.

131.   Among other ways, a violation of the Federal Wiretap Act occurs if a person:

(a)   intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]

(b)   intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication[.]

18 U.S.C. § 2511.

132.   Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a).

133.   In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally procured third-parties Google, Meta, and Microsoft, to intercept and endeavor to intercept the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members via the Websites. At relevant times, Defendant knew that by integrating and embedding Google's, Meta's, and Microsoft's tracking technologies, Google, Meta, and Microsoft would intercept the electronic communications of users of the Websites.

134.   In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members via the Websites.

135.   In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(c), Defendant disclosed, and endeavored to disclose, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, building marketing campaigns and improving advertisement targeting, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein. Indeed, Defendant procured Google, Meta, and Microsoft to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

136.   In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(d), Defendant used, and endeavored to use, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues by, *inter alia*, building marketing campaigns and improving advertisement targeting, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein.  Indeed, Defendant procured Google, Meta, and Microsoft to surreptitiously intercept the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

137.   The following items constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

      a.   The codes and programs Google, Meta, and Microsoft used to track Plaintiff's and Class Members' communications while they were navigating the Websites;

    b.   Plaintiff's and Class Members' browsers and mobile applications;

    c.   Plaintiff's and Class Members' computing and mobile devices;

    d.   The codes and programs used by Google, Meta, and Microsoft to effectuate their tracking and interception of Plaintiff's and Class Members' communications while they were using a browser or application to visit Defendant's Websites; and

    e.   The plan Google, Meta, and Microsoft carried out to effectuate their tracking and interception of the Plaintiff's and Class Members' communications while they were using Defendant's Websites.

138.   The patient communication information that Defendant permitted Google to intercept, and that Defendant otherwise disclosed to Google, via Defendant's integration of the Google tracking technology on the Websites—including but not limited to: the name of the particular hearing health product that users selected and the fact that users purchased that product, and users' answers to hearing health screening questions along with their results—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

139.   The patient communication information that Defendant permitted Meta to intercept, and that Defendant otherwise disclosed to Meta, via Defendant's integration of the Meta tracking technology on the Websites—including but not limited to: the fact that users booked an appointment, and the fact that users viewed a hearing health product and the price of that product—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

140.   The patient communication information that Defendant permitted Microsoft to intercept, and that Defendant otherwise disclosed to Microsoft, via

Defendant's integration of the Microsoft tracking technology on the Appointment Website—including but not limited to: the fact that users booked an appointment, and the name and address of the hearing center that users booked an appointment at—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

141. The transmissions described above were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

142. Google, Meta, and Microsoft were not authorized parties to the communications between Plaintiff and Class Members, on the one hand, and Defendant, on the other, because Plaintiff and Class Members did not know that these third parties were surreptitiously intercepting the data at issue and did not knowingly send any communications to Google, Meta, or Microsoft.

143. Plaintiff and Class Members did not consent to Defendant's conduct of: (1) procuring Google, Meta, and/or Microsoft to intercept and endeavor to intercept their confidential communications; (2) intercepting their confidential communications; (3) disclosing their confidential communications under circumstances that violated the Federal Wiretap Act; and (4) using their confidential communications under circumstances that violated the Federal Wiretap Act.

144. Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, violation of the CIPA, and the Health

Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-6(a)(3), among others.

145. HIPAA imposes a criminal penalty for knowingly disclosing individually identifiable health information to a third party. *See* 42 U.S.C. § 1320d-6. HIPAA defines IIHI as:

> [A]ny information, including demographic information collected from an individual, that—(A) is created or received by a health care provider ... (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6).

146. Defendant was not acting under color of law in intercepting and endeavoring to intercept Plaintiff's and Class Members' communications.

147. Defendant, Google, Meta, and Microsoft intercepted and endeavored to intercept the communications of Plaintiff and Class Members made via the Websites while those communications were in transit, as opposed to being in storage. Indeed, Defendant, Google, Meta, and Microsoft intercepted and endeavored to intercept the communications of Plaintiff and Class Members in real time and contemporaneously with Plaintiff and Class Members engaging in those communications.

148. After intercepting the communications, Google, Meta, and Microsoft used the contents of the communications to provide Defendant with analytics and marketing services, as well as for its own business purposes.

149. As a result of the above actions, Plaintiff and Class Members have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. As such, Plaintiff and Class Members are entitled to: (1) damages, in an amount to be determined at trial, assessed

as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

**<u>COUNT II</u>**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 631**
**(On Behalf of Plaintiff and the Subclass)**

150.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

151.   Plaintiff brings this Count individually and on behalf of the members of the Subclass.

152.   CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

153.   CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

154.   Google's, Meta's, and Microsoft's tracking technologies are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

155.   Google, Meta. And Microsoft are each a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021).  Further, Google, Meta, and Microsoft have the capability to use the wiretapped information for their own purposes.  Accordingly, Google, Meta, and Microsoft have been a third party to any communications between Plaintiff and Subclass Members, on the one hand, and Defendant, on the other.  *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

156.   At all relevant times, through its tracking technology, Google, Meta, and Microsoft willfully and without the consent of all parties to the communication, and/or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and Subclass Members, on the one

hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

157.   At all relevant times, Google, Meta, and Microsoft used or attempted to use the communications intercepted by its tracking technologies for their own purposes.

158.   At all relevant times, Defendant aided, agreed with, employed, permitted, and otherwise enabled Google, Meta, and Microsoft to wiretap Plaintiff and Subclass Members using Google's, Meta's, and Microsoft's tracking technologies and to accomplish the wrongful conduct at issue here.

159.   Plaintiff and Subclass Members did not provide their prior consent to Google's, Meta's, and Microsoft's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Subclass Members' electronic communications.  Nor did Plaintiff and Subclass Members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, and otherwise enabling Google's, Meta's, and Microsoft's conduct.

160.   The wiretapping of Plaintiff and Subclass Members occurred in California, where Plaintiff and Subclass Members accessed the Website, and where Google, Meta, and Microsoft—as enabled by Defendant—routed Plaintiff's and Subclass Members' electronic communications to Google's, Meta's, and Microsoft's servers.

161.   Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

//

//

//

//

## COUNT III
### Violation of the California Invasion of Privacy Act,
### Cal. Penal Code § 632
### (On Behalf of Plaintiff and the Subclass)

162.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

163.   Plaintiff brings this Count individually and on behalf of the members of the Subclass.

164.   CIPA § 632(a) provides for liability where an entity:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

165.   Google's, Meta's, and Microsoft's tracking technologies are "electronic amplifying or recording device[s]." *Id.*

166.   Here, Website users' communications with Defendant—made while browsing and booking appointments via the Appointment Website and made while browsing and purchasing hearing health products on the Purchase and Screening Website—contain sensitive and confidential medical information.

167.   First, the communications include individually identifiable information. Defendant enables Google to identify individual users with Google Analytics identity spaces—a combination of user IDs, user-provided data (*i.e.*, contact details like email address, phone number, name, and/or address, etc.), device IDs, and/or machine learning-based behavioral modeling—which, alone or in combination with other publicly available information, reveals the identity of the individual.   Defendant enables Meta to identify individual users by their respective Facebook accounts, utilizing the _fbp cookie.   Defendant also enables Meta to identify individual users through advanced matching, by which Meta records the contact details users provide

on the Websites (i.e., name, email address, phone number, etc.).  Defendant enables Microsoft to identify individual users utilizing cookies including the _uetsid and _uetvid cookies.

168.  Second, Website users' communications with Defendant relate to a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment. Google intercepts and/or otherwise obtains users' button clicks indicating the name and type of particular hearing health product that users selected and the fact that users purchased that product, and users' answers to hearing health screening questions along with their results.  Meta intercepts and/or otherwise obtains users' button clicks indicating the fact that users booked an appointment, and the fact that users viewed a hearing health product and the price of that product.  Microsoft intercepts and/or otherwise obtains Website users' button clicks indicating the fact that users booked an appointment, and the name and address of the hearing center that users booked an appointment at.

169.  Thus, Google, Meta, and Microsoft—as aided by Defendant—intercepted confidential medical information.

170.  When communicating with Defendant, Plaintiff and Subclass Members had an objectively reasonable expectation of privacy.  Plaintiff and Subclass Members did not reasonably expect that anyone other than Defendant would be on the other end of the communication, and that other third-party entities like Google, Meta, and Microsoft would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

171.  Plaintiff and Subclass Members did not consent to Google's, Meta's, or Microsoft's actions.  Nor have Plaintiff or Subclass Members consented to Google's, Meta's, or Microsoft's intentional use of an electronic amplifying or recording device

to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

172.   Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

**COUNT IV**
**Invasion of Privacy Under California's Constitution**
**(On Behalf of Plaintiff and the Subclass)**

173.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

174.   Plaintiff brings this Count individually and on behalf of the members of the Subclass.

175.   Plaintiff and Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and mobile applications without being subjected to wiretaps without Plaintiff's and Subclass Members' knowledge or consent.

176.   At all relevant times, by installing and embedding Google, Meta, and Microsoft tracking technologies into the Website so that Google, Meta, and Microsoft could intercept and/or otherwise obtain users' private communications with Defendant regarding their health conditions and treatment, Defendant intentionally invaded Plaintiff's and Subclass Members' privacy rights under the California Constitution.

177.   Plaintiff and Subclass Members had a reasonable expectation that their communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not enable Google's, Meta's, and Microsoft's interception of this sensitive information given that Defendant did not provide Plaintiff and Subclass Members with the required notice of

its practice of disclosures.

178.   Plaintiff and Subclass Members did not authorize Defendant to record and transmit Plaintiff's and Subclass Members' private medical communications alongside their personally identifiable health information.

179.   This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications.   Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

180.   Accordingly, Plaintiff and Subclass Members seek all relief available for invasion of privacy claims under California's Constitution.

<u>**COUNT V**</u>
**Intrusion Upon Seclusion**
**(On Behalf of Plaintiff, the Nationwide Class and California Subclass)**

181.   Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Classes.

182.   Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications about their health conditions and treatment; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and applications without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

183.   At all relevant times, by installing and embedding the Google, Meta, and Microsoft tracking technologies into the Website, so that Google, Meta, and Microsoft could intercept users' private communications with Defendant regarding their health conditions and treatment, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights by intruding into their private place, conversation or matter. Defendant's actions amount to an intrusion upon Plaintiff's and Class Members'

privacy because Plaintiff and Class Members did not consent to the particular conduct that Defendant engaged in—allowing Google, Meta, and Microsoft to intercept their sensitive conversations related to their health concerns and treatment.

184.   Plaintiff and Class Members had a reasonable expectation that their communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not enable third party interception of this sensitive information given that Defendant did not provide Plaintiff and Class Members with the required notice of its practice of disclosures.

185.   Plaintiff and Class Members did not authorize Defendant to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

186.   This invasion of privacy is highly offensive and serious in nature, scope, and impact because it relates to patients' private health condition and treatment communications.  Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

187.   Accordingly, Plaintiff and Class Members seek all relief available for Defendant's intrusion upon their seclusion.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a.  For a determination that this action is a proper class action;

    b.  For an order certifying the Class and Subclass, naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

    c.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

    d.  For an order finding in favor of Plaintiff, the Class, and Subclass on all counts asserted herein;

e.  For an award of compensatory damages, including statutory damages where available, to Plaintiff, Class, and Subclass Members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

f.  For punitive damages, as warranted, in an amount to be determined at trial;

g.  For an order requiring Defendant to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit; and

k.  For an order granting Plaintiff, Class, and Subclass Members such further relief as the Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all causes of action and issues so triable.


Dated: February 23, 2026           Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Stephen A. Beck*

Stephen A. Beck (Fla. Bar No. 1010183)
701 Brickell Ave., Suite 2100
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: sbeck@bursor.com

*Attorney for Plaintiff*